UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GRASSHOPPHER, INC. and<br>HEATHER MILLER,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ALEXA CURTIS and<br>BE FEARLESS, LLC,<br><br>　　　　　Defendants. | § § § § § § § § § § § § § | 1:24-CV-382-DII |

### ORDER

Before the Court is Plaintiffs' Heather Miller ("Miller") and GrasshoppHer, Inc. ("GrasshoppHer") (collectively, "Plaintiffs") Motion to Remand to State Court, (Dkt. 6). Defendants Alexa Curtis ("Curtis") and Be Fearless, LLC ("Be Fearless") (collectively, "Defendants") filed a response in opposition. (Dkt. 11). Also before the Court is Defendants' Opposed Emergency Motion to Vacate Temporary Injunction. (Dkt. 8). Plaintiffs filed a response, (Dkt. 9), and Defendants filed a reply, (Dkt. 10). After considering the motions, the supporting evidence, and the relevant law, the Court finds that both the motion to remand and the motion to vacate should be denied.

### I. BACKGROUND

Plaintiffs filed their original petition in a Travis County district court on December 11, 2023, (Case Summ., Dkt. 1-11). Plaintiffs allege that Miller and Curtis met in March 2022. (Original Pet., Dkt. 1-2, at 2). At the time, Miller was the founder of GrasshoppHer. (*Id.*). Miller and Curtis decided to work together, and on May 1, 2023, Curtis signed a stock vesting agreement with Miller, which named Curtis as a "co-founder." (*Id.*). Curtis was appointed as the chief marking officer and director of GrasshoppHer. (*Id.*). GrasshoppHer uses social media to market its professional development

1

community and platform to new and existing clients. (*Id.*). After hiring Curtis, GrasshoppHer intended to hold professional development summits for its clients throughout the United States and invested thousands of dollars in its Instagram account to build up its brand. (*Id.*).

Plaintiffs further allege that in July 2023, Curtis contacted American Express pretending to be Miller and cancelled a GrasshoppHer payment plan which Curtis contributed to as an owner, director, and officer of GrasshoppHer. (*Id.* at 2–3). Curtis then resigned from her role as chief marketing officer of GrasshoppHer. (*Id.* at 3). In late July 2023, Curtis changed the password for the GrasshoppHer Instagram account, deleted GrasshoppHer-branded content, and converted the account into an account for a competing company, Defendant Be Fearless. (*Id.*). Be Fearless offers "nearly identical serves as GrasshoppHer." (*Id.*). It also is offering summits directly in competition with GrasshoppHer's planned summits. (*Id.* at 6). Plaintiffs allege that Defendants actions are in violation of the stock vesting agreement that Curtis signed. (*Id.* at 7). Plaintiffs' original petition brings claims for breach of contract, breach of fiduciary duty, tortious interference with an existing contract, and conversion against Defendants. (*Id.* at 7–9). Plaintiffs also requested a temporary restraining order ("TRO") and temporary injunction ("TI") against Defendants. (*Id.* at 9–10).

On the same day that Plaintiffs filed their original petition in county court, Plaintiffs' counsel, Jacob Scheick, e-mailed the county court to request an emergency hearing on Plaintiffs' application for a TRO. (E-mail, Dkt. 9, 12–13). Scheick copied Curtis, who is both the individual defendant and the registered agent for Be Fearless, on the e-mail to the county court. (*Id.*). A copy of Plaintiffs' original petition and application for a TRO were attached. (*Id.*). Scheick also represented in the e-mail that he had been in previous communication with Curtis and that she had not hired counsel. (*Id.*). On December 12, 2024, the county court responded to Scheick's e-mail to notify him that it would hear Plaintiffs' application for a TRO on December 13, 2024, at 10 a.m. (*Id.* at 10). Curtis then replied via e-mail later that same day, just to the county court, and stated that she had

2

been living overseas since October and had no plans to return to America.[1] (*Id.* at 9). She also stated that she was trying to find adequate legal representation and needed more time. (*Id.*). On December 13, 2023, the county court considered Plaintiffs' application for a TRO and granted it. (Order, Dkt. 1-4). The county court temporarily restrained both Defendants for a period of 14 days from the following:

(1) Continuing to add content to the following social media accounts/webpages:
    a. https://www.instagram.com/alexa_curtis/
    b. https://www.lifeunfilteredwithalexa.com/
    c. https://www.instagram.com/befearless_inc, *i.e.* what is now the misappropriated BeFearless Instagram account) and/or
    d. offering summits in the next 14 days akin to such the BeFearless in NYC, April 2024 summit advertised on the https://www.lifeunfilteredwithalexa.com/all-events/.

The county court further restrained Curtis specifically for a period of 14 days from the following:

(2) From operating Be Fearless, LLC;
(3) From using the https://www.instagram.com/befearless_inc account;
(4) Advertising, communicating, and/or marketing to the GrasshoppHer, Inc. members; (including the members the Company had before Curtis usurped the Company's Instagram;
(5) Serving/offering career guidance to young women in the United States and/or offering career fairs/summits in the United States.

(*Id.*). The county court set a hearing on Plaintiff's request for a TI for December 20, 2023. (*Id.*). Scheick e-mailed a copy of the county court's order to Curtis the same day it was issued. (E-mail, Dkt. 9, at 14). In the body of the e-mail, Scheick notified Curtis of the TRO and its provisions, as well as the date of the hearing on Plaintiffs' application for a TI. (*Id.*). On December 19, 2023, Scheick again e-mailed Curtis to remind her of the December 20 hearing on Plaintiffs' application for a TI. (*Id.* at 20).

---

[1] Curtis's email to the county court came from the same e-mail address (ac@befearlesssummit.org) to which Scheick sent multiple e-mails notifying Curtis of application for the temporary restraining order and resulting TRO and temporary injunction.

On December 20, 2023, the county court considered Plaintiffs' application for a TI and granted it. (Order, Dkt. 1-5). The county court found that "Plaintiffs have sustained its burden for a probable right to recovery because of Defendant Curtis's prior and continued breach of the Stock Vesting Agreement" and that "Plaintiffs have met their burden to demonstrate that harm is imminent" and injury would be irreparable. (*Id.*). The county court enjoined Defendants until the earlier of judgment in this matter or July 14, 2024 from:

> (1) Adding any additional content (including but not limited to posts, reels, or any writing or video) to the following social media accounts/webpages (collectively, the "Webpages"):
>
>> a. https://www.instagram.com/alexa_curtis/, except that Curtis may add personal content to this account provided that it does not concern or relate to the use of web-based marketing and/or social media to market and/or offer professional development training, skills, community, strategies, and/or content to women under forty (40) years of age.
>>
>> b. https://www.lifeunfilteredwithalexa.com/
>>
>> c. https://www.instagram.com/befearless_inc, *i.e.* what is now the misappropriated BeFearless Instagram account) accounts and/or
>> d. Offering summits akin to the BeFearless in NYC, April 2024 summit advertised on the https://www.lifeunfilteredwithalexa.com/all-events/;
>
> (2) contacting, posting to, or soliciting any followers, customers, or potential clients of GrasshoppHer or of the Webpages, who were followers, customers, or potential clients of GrasshoppHer or the Webpages at any time during the period from May 1, 2023 through July 14, 2023.
>
> (3) otherwise using web-based marketing and/or social media to market and/or offer professional development training, mentorship (directly or indirectly), skills, community, strategies, and/or content to women under forty (40) years of age who are located in the United States.

(*Id.*). Scheick e-mailed Curtis on December 20, as well, to alert her to the results of the hearing and the granting of the TI. (E-mail, Dkt. 9, at 20).

On March 1, 2024, Plaintiffs filed a motion for substitute service with the county court, (Dkt. 1-11), which the county court granted on March 12, 2024, (Order, Dkt. 1-6). Plaintiffs served

both Defendants via Curtis's e-mail address on March 18, 2024. (Dkt. 1-6). Defendants filed their original answer in the county court on April 2, 2024. (Answer, Dkt. 1-3). Defendants then removed this case to federal court on April 10, 2024 on the basis of diversity jurisdiction. (Not. Removal, Dkt. 1). Plaintiffs filed a motion to remand, arguing that there is not diversity between the parties. (Dkt. 6). Defendants then filed their motion to vacate the TI instituted by the county court. (Dkt. 8). The Court will first address Plaintiffs' motion for remand before turning to Defendants' motion to vacate the TI.

## II. MOTION TO REMAND

### 1. Legal Standard

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441. District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Diversity jurisdiction "requires complete diversity— if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).

"[T]he citizenship of an LLC is determined by the citizenship of all its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "So, to establish diversity jurisdiction, a party 'must specifically allege the citizenship of every member of every LLC.'" *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (citing *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)).

The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute must "be strictly construed, and any doubt about the propriety of

removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## 2. Discussion

In their motion to remand, Plaintiffs argue that removal was improper because there is no diversity of citizenship. (Mot. Remand, Dkt. 6, at 2). According to Plaintiffs, both Plaintiff Miller and Defendant Be Fearless are citizens of Texas. (*Id.*). Further, Plaintiffs contend that because Be Fearless is a citizen of Texas, removal is improper under the in-state defendants' barrier posed by § 1446(b): "Because Defendant Be Fearless LLC was sued in the state of its citizenship, diversity jurisdiction over this entire matter is not proper." (*Id.*)

In response, Defendants argue that Be Fearless is in fact a citizen of California, not Texas, because Be Fearless is an LLC and its sole member, Curtis, is a citizen of California. (Resp., Dkt. 11, at 2). The Court agrees with Defendants. The citizenship of an LLC is determined by the citizenship of all its members. *See Harvey*, 542 F.3d at 1080. Thus, Be Fearless, with Curtis as its only member, must be a citizen of the same state as Curtis. Defendants attached an unsworn declaration of Curtis to their Notice of Removal. (Curtis Decl., Dkt. 1-9). In the declaration, Curtis states that she does not reside in Texas and is a citizen of California. (*Id.*). Plaintiffs fail to make any allegations as to the citizenship of Curtis. (*See* Mot. Remand, Dkt. 6, at 2). Rather Plaintiffs incorrectly state that Be Fearless must be a citizen of Texas because it was incorporated in Texas and has its principal place of business in Texas. (*Id.*). Because Plaintiffs are citizens of Texas and Delaware, (Not. Removal, Dkt. 1, at 2), and Defendants are citizens of California, there is diversity between the parties as required for federal jurisdiction. The Court, therefore, will deny Plaintiffs' motion for remand, including their request for attorney's fees and costs.

### III. MOTION TO VACATE TEMPORARY INJUNCTION

#### 1. Legal Standard

District courts in the Fifth Circuit "apply the same standards in reviewing a preliminary injunction under a motion to dissolve as they do in deciding whether to grant one in the first instance." *Vaughn v. St. Helena Par. Police Jury*, 261 F. Supp. 2d 553, 556 (M.D. La. 2002) (citing *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975)); *see also Texas v. United States*, No. 7:15-CV-00056-O, 2015 WL 13424776, at *1 (N.D. Tex. June 26, 2015). Federal Rule of Civil Procedure 65(a)(1) provides that the Court "may issue a preliminary injunction only on notice to the adverse party." The party moving for the preliminary injunction must establish the following: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). Texas Rule of Civil Procedure 681 similarly sets out that "[n]o temporary injunction shall be issued without notice to the adverse party." Under Texas law, "[t]o obtain a temporary injunction, the applicant must plead and prove the following three elements: (1) a cause of action against the adverse party; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). As Defendants only raise lack of notice as an issue in their motion to vacate, the Court will not address any of the other elements required for a preliminary injunction.

#### 2. Discussion

Defendants allege that the county court wrongfully granted Plaintiffs' application for a TI because it was issued without notice to Defendants. (Mot. Vacate, Dkt. 8, at 4). Specifically, Defendants contend that they were entitled to service of process prior to the issuance of the TI. (*Id.*

7

at 1). Pointing to the fact that they were not properly served with the state summons and petition until March 2024, Defendants state that the TI, which was granted in December 2023, must be vacated. (*Id.* at 4).

Plaintiffs argue that under both federal and Texas law, an adverse party only needs to receive notice of TI proceedings, not service of process. (Resp., Dkt. 9, at 1 (citing Fed. R. Civ. P. 65; Tex. R. Civ. P. 681)). Plaintiffs further argue that Defendants have not alleged that they did not receive notice, only that they did not receive service of process. (*Id.* at 2). Plaintiffs emphasize that Scheick notified Defendants of the application for a TRO and TI, the subsequent hearings, and the resulting orders via Curtis's e-mail address ac@befearlesssummit.org and that Curtis corresponded with the county court about the case using that same e-mail address. (*Id.* at 3). Defendants counter that Scheick's e-mails to Curtis notifying her of Plaintiffs' applications for injunctive relief and the hearings were not sufficient notice because "Plaintiffs failed to prove Defendants actually received notice of the Hearing." (Reply, Dkt. 10, at 2).

The Court finds that Defendants received notice of the of the TI proceedings. Plaintiffs notified Defendants using an e-mail address that Curtis used to communicate with the county court on December 12, 2023. It is absurd for Defendants to argue that they did not receive notice of the TI hearing when Curtis herself e-mailed the county court to tell them that she was abroad, had no plans to return, and was trying to find a lawyer in the same e-mail chain in which Scheick provided notice of Plaintiffs' pending application for a TRO and TI. Both the federal and Texas law is clear that notice, not service of process, is all that is required before a court may issue a TRO or TI. As explained by the Fifth Circuit, "Rule 65(a) does not require service of process, but rather requires notice to the adverse party." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, Ltd., 80 F.4th 536, 542 (5th Cir. 2023), *cert. denied sub nom. Shenzen Sanlida Elec. Tech. Co., Ltd. v. Whirlpool Corp.*, 144 S. Ct. 807 (2024) (internal quotations omitted). In the same vein, Texas courts require service of process for a

trial on a petition for a permanent injunction, but "such a process is not necessary on an application for a temporary injunction." *Rapid Settlements, Ltd. v. Settlement Funding, LLC*, 358 S.W.3d 777, 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Long v. State*, 423 S.W.2d 604, 605 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The Court will not dissolve the TI in this case based on the incorrect argument that service of process is a prerequisite to a temporary injunction or based on the allegations that Defendants never received notice.

The Court now turns to Plaintiffs' request for attorney's fees, (Resp., Dkt. 9, at 6). Plaintiffs argue that Defendants' motion to vacate violates Federal Rule of Civil Procedure 11(b) because "Defendants' attorneys did not make a reasonable inquiry into the facts and law before signing and presenting their Motion to Vacate, and/or the motion is made for the improper purpose of a frivolous attempt to avoid the County Court's Temporary Injunction." (*Id.*). Plaintiffs request $1,200 in attorney's fees for Plaintiffs' violation of Rule 11. (*Id.* at 7; Sheick Decl., Dkt. 9, at 29).

Federal Rule of Civil Procedure 11 requires that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Plaintiffs included their request for sanctions in their response to Defendants' motion to vacate rather than filing it as a separate motion. Therefore, the Court will deny Plaintiffs' request without prejudice to Plaintiffs filing a separate motion for sanctions.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Plaintiffs' motion to remand, (Dkt. 6), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to vacate the temporary injunction, (Dkt. 8), is **DENIED WITHOUT PREJUDICE**.

**IT IS FINALLY ORDERED** that Plaintiffs' request for attorney's fees is **DENIED WITHOUT PREJUDICE**.

**SIGNED** on May 7, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE